## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

UNITED STATES OF AMERICA            No. 1:21-cr-00400-NLH

     v.                          **OPINION**

ANTHONY D. PARKER

---

**APPEARANCES**:

KRISTEN M. HARBERG
ALISA SHVER
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
401 MARKET STREET - 4TH FLOOR
CAMDEN, NJ 08101

    *On behalf of the Government.*

JEFFREY CHARLES ZUCKER
ZUCKER, STEINBERG & WIXTED, PA
415 FEDERAL STREET
CAMDEN, NJ 08103

ROBERT M. GAMBURG
1500 WALNUT STREET
22ND FLOOR
PHILADELPHIA, PA 19102

    *On behalf of Defendant*

**HILLMAN**, District Judge

    Before the Court are defendant Anthony Parker's motions for a judgment of acquittal under Federal Rule of Criminal Procedure 29 and for a new trial under Federal Rule of Criminal Procedure 33 (ECF 123).  Also before the Court is Defendant's motion to

file volumes IX and X of the trial transcripts under seal.  (ECF 125).  For the reasons expressed below, the motions will be denied.

## BACKGROUND

The defendant, Anthony Parker, was indicted on two counts, Count I, for being a felon in possession of a firearm, and Count II, for witness tampering.  The parties agreed to a bifurcated trial in which the Government would try Count II in phase I and Count I in phase II.  As part of phase I, there were two special interrogatory questions for the jury to answer in addition to a finding of Guilty or Not Guilty on Count II.  Special Interrogatory I read, "Did the defendant, Anthony D. Parker, on or about April 14, 2021, knowingly possess a firearm, namely one Glock 9mm semi-automatic pistol, Model 19 Gen 5, bearing seral number BGMX058?"  Special Interrogatory II read, "Did the defendant, Anthony D. Parker, possess that firearm in or affecting interstate or foreign commerce?"

During the course of the trial, in connection with a preliminary ruling by the Court regarding the admissibility of evidence under Federal Rule of Evidence 404(b), the Government referenced the fact that Defendant was the subject of a separate drug investigation.  The Court had allowed reference to the fact of the investigation in order to explain why officers who observed Defendant with a firearm did not immediately detain

2

him.  (ECF 92).

Later, during her closing argument during phase I of the trial, one of the prosecutors made statements that could be interpreted as suggesting to the jury that defense counsel colluded to concoct a false alibi for Defendant and that defense counsel's job was simply to "get Defendant off" on the charges. (ECF 138 at 131:24- 132:2 ("And they're not trying to get to the truth. They're trying to get the defendant off. That's the defense, that's the defense attorney's job, to get the defendant off, not to get to the truth.")).  Defendant objected to this line of argument and the Court admonished the Government outside the presence of the jury. (ECF 139 at 37:2- 38:12 (acknowledging Defendant's objection and stating, "I was taken aback by the government's closing as well.")).

The Court further directed the Government to clarify its improper statements in its rebuttal argument.  (Id. at 41:18-20 ("Now, it crosses the line to suggest that you were involved in any conspiracy in that regard, and I'm going to invite the government to fix that now[.]")).  Finally, the Court gave a curative instruction to the jury.  (Id. at 56:11-18 ("To the extent that the prosecutor made comments yesterday that suggested that Mr. Zucker, defense counsel, was not interested in the truth or knowingly participated in concocting a false story, those comments were improper and you are to disregard

3

those comments. There is no reason to suggest or believe that
Mr. Zucker or anyone on his staff acted improperly during their
representation of Mr. Parker.")).  The jury began its
deliberations on February 23, 2022. (Id. at 96:19-20 (jurors
left the courtroom to begin deliberations)).

After deliberations on phase I began, the jury initially
came back to the Court to indicate that it had reached a partial
verdict but could not reach a unanimous decision on the Special
Interrogatories.  (ECF 140 at 24:1-7 (the Court's announcement
that it had received a verdict form from the jury with a partial
verdict)).  The Court gave the jury Third Circuit Model Jury
Instruction 9.05 and instructed them to continue deliberating.
(Id. at 28:17- 30:21).  On Friday, February 25, 2022 while the
jury was still deliberating, the Court received a note from the
foreperson indicating that there was concern in the jury that
Juror 12 was not participating in the deliberative process.
(ECF 114).

In order to assess the claim, the Court conducted a voir
dire of each juror individually to ask them if they had any
reason to believe that any of the jurors could not deliberate.
Eight of the twelve jurors answered in the affirmative and
indicated Juror 12.  (See generally ECF 120 (voir dire of all 12
jurors)).  After consideration of the issue, the Court dismissed
Juror 12 and seated an alternate juror to begin deliberations

4

anew.  (ECF 122 at 29:5 -30:19 (dismissing Juror 12 for cause and substituting Juror 13 (Alternate #1) in her place)).  The Court issued a written Opinion and conforming Order supplementing an oral opinion issued at trial.  (ECF 127, 128).

Shortly thereafter, the jury returned with a verdict on phase I of the trial, finding Defendant not guilty of Count II and answering the Special Interrogatories in the affirmative. (ECF 122 at 39:5-15).  That same day, the parties completed phase II of the trial, on unlawful possession of a firearm, and submitted the case to the jury.  (Id. at 62:12-13).  The jury returned with a verdict of guilty on Count I.  (Id. at 66:23).

Following the rendering of the verdict for phase II of the trial, on March 14, 2022, Defendant filed the instant motion for judgment of acquittal or, in the alternative, a new trial.  (ECF 123).  He also filed a motion to file volume IX and X of the trial transcripts under seal.  (ECF 125).  The Government opposed Defendant's motion in a brief filed on May 12, 2022. (ECF 145).

## DISCUSSION

### I.  Motion Under Rule 29

In deciding a Rule 29 motion, the Third Circuit has instructed that "'[i]t is not for [this Court] to weigh the evidence or to determine the credibility of the witnesses.'" United States v. Dent, 149 F.3d 180, 187 (3d Cir.1998) (quoting

United States v. Voight, 89 F.3d 1050, 1080 (3d Cir.1996)).

Instead, this Court "must view the evidence in the light most

favorable to the government" and deny the motion "if any

rational trier of fact could have found the essential elements

of the crime beyond a reasonable doubt." Id. (internal quotation

marks and citations omitted).  Indeed, "[t]he evidence need not

be inconsistent with every conclusion save that of guilt, so

long as it establishes a case from which a jury could find the

defendant guilty beyond a reasonable doubt."  United States v.

Carr, 25 F.3d 1194, 1201 (3d Cir.1994).  Accordingly, a

sufficiency of the evidence claim imposes a "very heavy burden"

on the defendant.  See Dent, 149 F.3d at 187; Carr, 25 F.3d at

1201.

The crux of the motion under Rule 29 is whether the

Government proffered sufficient evidence that Defendant

possessed a firearm.  Specifically, Defendant argues that the

testimony of Detective Henry that he saw Defendant with a gun

was not sufficient for the Government to meet its burden.  (ECF

123 at 4).  Defendant's contention is that Detective Henry could

not have seen Defendant carrying a gun as he exited a liquor

store and approached his car because it was nighttime and

Detective Henry was actively turning his car at the time that he

observed Defendant.  (Id.)  He argues that Detective Henry's

"claims are not sustainable as credible" because Detective Henry

6

must have had to observe Defendant through tinted windows of his
vehicle and would not have been able to see a gun.  (<u>Id</u>.)
Defendant also argues that video surveillance showed that
Defendant was clutching a liquor bottle, not a gun.  (<u>Id</u>.)

The Government disagrees.  First, it argues that it offered
sufficient evidence to support a conviction.  Regarding actual
possession of the gun, the Government highlights that the record
showed that at the time of the identification "Detective Henry
was wearing his prescription eyeglasses, and the intersection
was well-lit with approximately seven streetlights."  (ECF 145
at 5).  Moreover, a surveillance video offered into evidence
showed Henry's truck headlines illuminating the area where
Defendant would have been as he approached his own car further
enhancing and illuminating Henry's field of vision.  In
addition, they point out that Detective Henry's testimony was
unwavering on the way in which he viewed the gun and that was
100% certain he saw a gun.  (<u>Id</u>. at 5-6).  Finally, the
Government points out that Detective Henry testified to his
training and experience with handguns that made him able to
quickly notice the handgun.  (<u>Id</u>. at 6).

The Government highlights that Detective Henry was not the
only witness that it proffered to prove that Defendant possessed
the gun that evening.  Under a theory of constructive
possession, it also proffered ample evidence of the fact that a

gun was found hidden in Defendant's car, which was sufficient to support a finding of possession under that theory of possession. (ECF 145 at 7).

The Government also mentions that during the trial it introduced video surveillance of someone trying to break into Defendant's car, which is probative of Defendant's knowledge that he had a gun in his car and had sent someone to recover it. (Id. at 8).  In the same vein, they state that the amount of cash that was seized from the car presented a motive for Defendant to have possessed the gun.  (Id. at 12).  The Government argues that David Brisbon, who testified for the defense that an acquaintance had left the gun in Defendant's car when Brisbon borrowed the car from Defendant, was not credible. (Id. at 8-12).  Thus, it concludes that there was ample evidence in the record for the jury to find the possession element of Count I to be satisfied.  (Id. at 13).

The Court agrees with the Government.  As mentioned above, on a motion for judgment of acquittal pursuant to Rule 29, the Court is not free to weigh the evidence.  Dent, 149 F.3d at 187. Rather, viewing the evidence in the light most favorable to the Government, it must assess whether a reasonable jury could have reached the verdict rendered in the case.  Id.; Carr, 25 F.3d at 1201; United States v. Moe, 810 F. App'x 114, 117 (3d Cir. 2020) ("We will affirm the District Court's denial of Moe's Rule 29

motion because there was sufficient evidence for a reasonable
jury to convict Moe."). The Court finds no reason to disturb
the jury's verdict. First, the jury was free to credit
Detective Henry's testimony just as it was free to discredit
that of Brisbon. United States v. Darwish, 74 F. App'x 208, 210
(3d Cir. 2003) ("Counsel recognized that Darwish's argument was
meritless inasmuch as a jury is free to credit or to reject, in
whole or in part, the evidence admitted at trial. In this case,
the jury obviously rejected Darwish's testimony and credited
that of his coconspirators."); Kusen v. Phillips, No. CIV.06-
5634 (JBS), 2008 WL 3871717, at *2 (D.N.J. Aug. 19, 2008)
("A jury would be free to credit Mr. Phillips' testimony and to
disbelieve Mr. Gantt's[.]").

Further, Defendant's focus in his motion on the perceived
weaknesses of Detective Henry's testimony misses the fact that
the jury did not have to find that Defendant actually possessed
the gun to convict him. A determination of constructive
possession would have been sufficient. See United States v.
Cobb, 794 F. App'x 194, 195 (3d Cir. 2020) ("It is well
established that possession can be actual or constructive.");
United States v. Lowery, 265 F. App'x 111, 114 (3d Cir. 2008)
("To possess means to have something within a person's control.
This does not necessarily mean that the defendant must hold it
physically, that is, have actual possession of it. Possession

includes sole and joint possession. Possession also includes
both actual and constructive possession."). The Government's
case offered abundant evidence of constructive possession in
terms of the handgun being recovered from a hidden compartment
in Defendant's car and the fact that someone tried to break into
the car after it was taken into police custody. In sum, viewing
the evidence in a light most favorable to the Government, there
was enough in the record for the jury to find Defendant guilty
of Count I beyond a reasonable doubt. <u>Carr</u>, 25 F.3d at 1201.

## II.  **Motion under Rule 33**

In deciding a Rule 33 motion based on the weight of the
evidence, the Third Circuit has instructed that "[a] district
court can order a new trial on the ground that the jury's
verdict is contrary to the weight of the evidence only if it
believes that there is a serious danger that a miscarriage of
justice has occurred-that is, that an innocent person has been
convicted." <u>United States v. Brennan</u>, 326 F.3d 176, 189 (3d
Cir.2003) (internal quotation marks and citation omitted).
"Thus, 'motions for a new trial based on the weight of the
evidence are not favored.'" <u>Id</u>. (quoting <u>Government of Virgin
Islands v. Derricks</u>, 810 F.2d 50, 55 (3d Cir.1987)).  In
determining whether "an innocent person has been convicted," the
Third Circuit explained that a district court "does not view the
evidence favorably to the Government, but instead exercises its

own judgment in assessing the Government's case." Id.

Separately, a defendant may file a motion under Rule 33 where they allege that there has been error in the proceedings or prosecutorial misconduct that merits a new trial. United States v. Tullies, No. CR 18-21 (KM), 2018 WL 5995491, at *6 (D.N.J. Nov. 14, 2018), aff'd, No. 19-2957, 2022 WL 413945 (3d Cir. Feb. 10, 2022) ("A Rule 33 motion may also be based on an alleged error or combination of errors at trial.").  In terms of error, "district courts have held that a new trial will be ordered when it is 'reasonably possible that such error, or combination of errors, substantially influenced the jury's decision.'") (quoting United States v. Crim, 561 F. Supp. 2d 530, 533 (E.D. Pa. 2008), aff'd, 451 F. App'x 196 (3d Cir. 2011)).

In terms of prosecutorial misconduct, "[a] prosecutor's comments can create reversible error if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" United States v. Lee, 612 F.3d 170, 194 (3d Cir.2010) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); see also United States v. Binstein, No. CRIM. 94-386(JBS), 1996 WL 19132, at *16 (D.N.J. Jan. 3, 1996), aff'd, 101 F.3d 692 (3d Cir. 1996) ("Rule 33 affords relief if the trial court finds prosecutorial misconduct or when the trial court does not believe the evidence supports the jury's

11

verdict.").

### a. **Sufficiency of Evidence to Sustain a Conviction**

The Court holds that the evidence was sufficient to sustain Defendant's conviction on Count I.  Unlike in its review of the motion under Rule 29, the Court does not view the evidence favorably to the Government, but rather exercises its own judgment.  Brennan*,* 326 F.3d at 189.  Looking at the record holistically, it holds that the verdict was not against the weight of the evidence.  United States v. Onque, 169 F. Supp. 3d 555, 570 n.2 (D.N.J. 2015), aff'd, 665 F. App'x 189 (3d Cir. 2016) ("To the extent Mashon challenges her conviction under Rule 33 for being against the weight of the evidence, the Court must also deny that claim. Viewed neutrally, the evidence against Mashon was not so weak to suggest that the jury wrongly convicted an innocent person.").

As he did in his motion under Rule 29, Defendant specifically argues that Detective Henry's testimony that he saw Defendant holding a gun was not credible.  Weighing the evidence that the Court detailed in analyzing the motion under Rule 29, the Court disagrees.  The Court sees nothing in Detective Henry's testimony that was so flawed that there is a serious danger that a miscarriage of justice has occurred.  The objective evidence presented showed that Defendant had entered the store with his right hand in his jacket pocket as he walked

as if grasping something.  Detective Henry was an experienced
street detective knowledgeable in firearms and he had a clear,
well-lit, and unobstructed view of what he said was Defendant
holding a handgun against his side as he approached his car.  On
direct and cross-examination he was adamant he saw Defendant
holding a gun.  In addition, the evidence at trial showed that a
handgun was found in a hidden compartment accessible to the
driver in the Defendant's car seized that night and that someone
tried to break into Defendant's car once it was in police
custody removing the hidden panel.  The jury could have
reasonably credited that evidence as proof that Defendant
constructively possessed a gun and did so knowingly.

It also could have fairly decided to discredit the
narrative of Brisbon given the inconsistency between his trial
testimony and a previously sworn statement submitted in state
court as set forth in more detail below.  A reasonable juror
could have easily accepted the Government's argument that
Brisbon's testimony, offered in support of his lifelong friend,
was at times bizarre, flippant, non-sensical and often evasive.
It follows then that a rational juror could have easily rejected
his central premise that someone else had placed the handgun in
a secret compartment in Defendant's own car, the same car
Detective Henry saw the Defendant poised to enter with a gun in
hand.  There was more than enough evidence to sustain a

conviction on Count 1.  In sum, "[t]here is no serious danger—indeed no danger at all—that a miscarriage of justice occurred and that an innocent person was convicted." <u>United States v. Lacerda</u>, Crim. No. 12-303 (NLH), 2015 WL 3952650, at *6 (D.N.J. June 29, 2015), <u>aff'd,</u> 958 F.3d 196 (3d Cir. 2020).

b. **The Government's Alleged Prosecutorial Misconduct**

Defendant points to two things that it characterizes as prosecutorial misconduct: the Government's reference to the fact that Defendant was under a drug investigation and the Government's arguments in closing that suggested improper conduct by defense counsel.  With respect to the reference to the drug investigation, Defendant acknowledges that the Court ruled in limine that the Government could introduce this information for the limited purpose of explaining why Detective Henry did not immediately stop Defendant when he observed him with a gun.  (ECF 123 at 5).

Indeed, this Court found "that a limited disclosure of the existence of an ongoing investigation at the time Defendant's vehicle was stopped and later impounded is relevant and serves the non-propensity purpose of explaining why the officer, who at time was acting in an undercover capacity and driving an undercover vehicle, did not approach and question the Defendant after he observed the Defendant on April 14, 2021 leaving a liquor store and displaying a firearm as he entered his car."

14

(ECF 92 at 2).  The thrust of Defendant's arguments is that the Government made much more than a limited disclosure of the drug investigation and repeatedly brought up the investigation.  (ECF 123 at 5).  The Government contends that its reference to the drug investigation was completely within the scope of the Court's rulings and that to the extent that there was any error, the Court ameliorated it through the use of a limiting instruction.  (ECF 145 at 18).

The Court finds no prosecutorial misconduct such that references to the drug investigation "so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Lee, 612 F.3d at 194.  The Court specifically issued a written ruling prior to the start of trial explaining the specific non-propensity purpose for which the Government could reference the investigation and the Government's references were in the spirit of those parameters.  Further, at the close of Detective Henry's testimony, the Court issued a limiting instruction regarding the juror's permissible consideration of that fact.  (ECF 133 at 134:5-18).  This use of a limiting instruction minimized the risk of any prejudice. United States v. Crim, 451 F. App'x 196, 204 (3d Cir. 2011) ("Of course, any risk of prejudice could have been minimized by a limiting instruction."); United States v. Nagle, No. 1:09-CR-384-01, 2013 WL 3894841, at *63 (M.D. Pa. July 26, 2013) (noting

that curative instructions minimize risks of error).

True, the existence of the drug investigation came up during the testimony of Lieutenant Gonzalez, not just the testimony of Detective Henry.  As the Court noted on the record, that was beyond the scope of the Government's motion in limine.  (ECF 133 at 155:10-11 ("[I]t was only Detective Henry's testimony that was the subject of the briefing and my ruling.")).  After that testimony, the Court denied Defendant's motion for a mistrial and offered to give another limiting instruction at that time.  (Id. at 155:15-21).  Defendant declined the offer.  (Id. at 157 at 4-5).  At the end of trial, the Court issued another limiting instruction regarding the jury's consideration of the reference to the drug investigation and its application to Detective Henry's state of mind.  (ECF 139 at 78:14-22).

The Court acknowledges that the Government referenced the drug investigation more than the Court contemplated in granting their motion in limine.  That said, as the Court noted in its ruling on the motion in limine, the Third Circuit has made clear that Federal Rule of Evidence 404(b) may be used as a vehicle to explain the motive of a witness, not just a defendant. (ECF 92 at 2); United States v. Green, 617 F.3d 233, 250 (3d Cir. 2010) ("This case is unusual in that the proper purpose we have identified relates to a witness's motive, not the defendant's.

16

While this may be uncommon, it is appropriate. Rule 404(b) provides that evidence of other crimes is inadmissible to prove the character of 'a person,' but may be admissible as proof of that person's 'motive, opportunity, intent,' etc. It does not specify that evidence is only admissible to prove *the defendant's* motive, opportunity, or intent.") (emphasis in original).

Though the Court did not conduct a pretrial balancing test pursuant to Federal Rule of Evidence 403 with respect to Lieutenant Gonzalez's testimony, as that was not the subject of the motion in limine, the Court finds that the probative value of the testimony was not substantially outweighed by its risk of prejudicial effect. At worse, it was merely cumulative and corroborative of Henry's limited testimony on the same topic as well as consistent with the Court's ruling that the fact of the investigation was admissible to explain why the police acted the way they did that night toward the Defendant. See <u>Hurley v. Atl. City Police Dep't</u>, 174 F.3d 95, 110 (3d Cir. 1999) (considering the balance of Federal Rule of Evidence 403 when determining if the district court's admission of evidence was error and if so, whether it was harmless). In sum, the Court holds that the reference to Defendant being subject to a drug investigation did not infect the trial with unfairness such that Defendant was denied due process. <u>Lee</u>, 612 F.3d at 194.

17

The Court comes to the same conclusion with respect to the Government's remarks regarding defense counsel in its closing statement.  Defendant argues that the Government's comments suggested that defense counsel impermissibly concocted a false defense for Defendant and criticized Defendant's constitutionally protected right to go to trial.  (ECF 123 at 6-7).  Defendant also contends that the Government's apology for those comments in rebuttal were not sufficient even with the Court's curative instruction.  (Id.)  He points to the Government's characterization of Defendant's defense as "smoke and mirrors" during the rebuttal as further misconduct.  (Id.)

In opposition, the Government contends that the comments made regarding concocting a defense were regarding Brisbon and Defendant, not defense counsel.  (ECF 145 at 34).  There is merit to this argument, as the defense presented testimony at trial from Brisbon that directly contradicted a sworn affidavit of Brisbon, written by the Defendant's trial counsel after interviewing Brisbon, which was submitted to a state judge in seeking bail for the Defendant before the instant case was adopted for federal prosecution.  In the bail application, Brisbon swore to the state judge that a third person had told Brisbon that the third person had hidden the gun in the Defendant's dashboard when the two of them had borrowed the car to entertain some prostitutes.  Clearly, such testimony would

have been inadmissible in Defendant's trial as rank hearsay. But Brisbon, called by the Defense and questioned by the very same lawyer who prepared the state court affidavit (and without disclosing its existence) testified he saw the third person place the gun in the dashboard, changing his story in a meaningful way while at the same time avoiding any objection on hearsay grounds.

For its part, although the Court admonished the prosecution for its remarks, in essence compelled a necessary apology, and absolved the Defense of any taint of misconduct in its curative instruction, the Court shared the Government's concern as to how Brisbon's testimony was presented by the defense. More specifically, this Court expressed its concern that the Defendant's trial counsel had presented sworn testimony from the same witness in two different courts that was materially and directly contradictory without disclosing it to the Court in advance. See RULES OF PROF'L CONDUCT R. 3.3, CANDOR TOWARD THE TRIBUNAL (N.J. CT. 2021).

To make matters worse, Brisbon professed to be illiterate and the prior sworn affidavit submitted to the state court was not just prepared by Defendant's trial counsel, it was written by him and read to Brisbon word for word before Brisbon signed it and it was submitted in state court. In such circumstances, and although the Government disavows that position now, it would

19

not be unreasonable for one to be suspicious that Brisbon's trial testimony that he saw the third person place the gun in the hidden compartment rather than simply having heard of it, testimony rejected by the jury, was a conducted false story as part of a conscious strategy.[1]

Nonetheless, the Government, as it no doubt should, admits that the comment regarding the job of defense counsel to "get the defendant off" was "regrettably made."  But it also contends that in the context of the whole trial, with the Government's apology in the rebuttal closing argument, it does not justify Defendant's motion.  (Id. at 34-38).  It states that its characterization of the defense's closing argument as "smoke and mirrors" was an appropriate response to the defense's argument that law enforcement improperly conducted their investigation. (Id. at 40).  Finally, it notes that the objections to the Government's arguments were not made contemporaneously and

---

[1] This third person, Nkosi Waheed, also submitted an affidavit in the state bail proceeding, prepared and submitted by Defendant's trial counsel in this matter, claiming the gun in Defendant's car was Waheed's gun.  Counsel for the Defendant raised the possibility that Waheed would be called by the defense and at one point he was expected at the courthouse to testify at trial. He was never called.  Of course, the Defendant had no obligation to call any witness.  The point is simply that Waheed was apparently available to the Defendant but Brisbon's change in testimony from hearsay recipient to a person with personal knowledge of the placement of the gun in Defendant's car provided an opportunity to present the same fact – that the gun was Waheed's not the Defendant's - without the need for Waheed's testimony on the same point.

therefore were waived.  (Id. at 36, 40).

As a general matter, to preserve an objection, it must be lodged contemporaneously.  United States v. Pungitore, 910 F.2d 1084, 1125-26 (3d Cir. 1990) ("[W]e may review only for plain error, as appellants failed to preserve their objections to the prosecutor's rebuttal summation.").  In the context of argument, the Supreme Court has held that it may be appropriate for opposing counsel to wait for a suitable break in an argument of another party to lodge an objection. Id. at 1126 n.58 ("We could excuse counsel's apparent decision to wait for a suitable break in the argument to raise the objection, as we recognize that 'interruptions of arguments ... are matters to be approached cautiously.'") (quoting United States v. Young, 470 U.S. 1, 13 (1985)).  Thus, the Court does not find the fact that Defendant waited until the Government finished its closing argument to object to the summation to be a waiver.

However, Defendant waited until the filing of this instant motion to object to the "smoke and mirrors" comment in the Government's rebuttal.  The Court finds that response to be too tardy.  United States v. Keenan, 788 F. App'x 861, 863 n.4 (3d Cir. 2019) (noting that contemporaneous objections are critical to give the trial court an opportunity to remedy a purported error).

Notwithstanding arguments of waiver, the Court finds that

the apology of the Government during rebuttal and the Court's curative instruction remedied any error. United States v. Fulton, 837 F.3d 281, 306 (3d Cir. 2016) ("To determine whether a prosecutor's comments deprived a defendant of a fair trial requiring reversal, an appellate court must consider the offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant.") (internal quotation marks omitted).

Considering the evidence presented in the trial, the fact that the Government's comments did not take up the majority of its closing argument, the fact that the Government clarified its comments on rebuttal, and that the Court gave a curative instruction immediately thereafter clearly labelling the Government's comments as improper and dispelling any suggestion of improper conduct by defense counsel, the Court holds that Defendant was not deprived of the right to a fair trial. Id.; Tullies, 2018 WL 5995491 at *6 ("[T]he court must consider the alleged errors in the context of the strength of the evidence of guilt, the scope of the objectionable conduct in relation to the entire proceeding, and the ameliorative effect of any curative instruction."); Nagle, 2013 WL 3894841 at *63 ("Based on these curative and final instructions, the fact that the challenged statement was a brief, isolated comment made during a closing

22

argument that exceeded two hours, and considering the strength of the evidence in support of conviction, the court cannot conclude that Defendant was prejudiced, even if the comment could be considered improper."[2]  This is especially so in light of the strong evidence that the Defendant was guilty of gun possession.

### c. **Defendant's Assignment of Error**

Defendant indicates two aspects of his trial that he terms error that justify a new trial: the dismissal of Juror 12 and the jury's alleged confusion regarding the meaning of possession. (ECF 123 at 7-9).

Defendant argues that the Court dismissed Juror 12 without giving Defendant an opportunity to object which resulted in a denial of due process.  (Id. at 8).  Defendant misstates the record.  After conducting an individual voir dire of all 12

---

[2] The Court views the Government's rebuttal comments on "smoke and mirrors" through a different lens as this comment went to perceived problems with defense counsel's argument rather than a personal attack on defense counsel. United States v. Rivas, 493 F.3d 131, 139 (3d Cir. 2007) ("[T]he comment that defense counsel's 'job is to take your focus off the issue' was not, in this context, improper argument.")  Further, given that defense counsel improperly raised in its closing the argument that law enforcement conducted a flawed investigation, the Government's comment can be seen as an invited response.  Pungitore, 910 F.2d at 1126 ("Reviewing the record as a whole, we conclude that a reversal is not warranted because the prosecutor's invocation of the oaths of office taken by the government officials involved in this case fell squarely within the invited response doctrine.").

jurors, the Court invited both Defendant and the Government to submit letters regarding their position on whether Juror 12 should be dismissed.  (ECF 121 at 103:14-19).  Defendant never did so.  Further, Defendant did actually object.  The next court day, after the Government announced its intention to move for Juror 12's dismissal, defense counsel put its objection on the record and explained why they were opposing the motion.  (ECF 122 at 31:22-32:18).

After Defendant filed the instant motion, the Court issued an Opinion explaining its decision to dismiss Juror 12.  (ECF 127).  The Court will not completely rehash that Opinion here but will reiterate a few salient points.  The touchstone case regarding dismissal of a jury during deliberations is United States v. Fattah, 914 F.3d 112 (3d Cir. 2019).  Fattah emphasized that "District courts may discharge a juror for bias, failure to deliberate, failure to follow the district court's instructions, or jury nullification when there *is no reasonable possibility that the allegations of misconduct stem from the juror's view of the evidence*."  Id. at 150 (internal alterations omitted) (emphasis in the original).  This standard is akin to the beyond a reasonable doubt standard.  Id.  As the Third Circuit held, considerable latitude is given to the district court in making this decision, because the district court is best poised to assess the facts militating for or against

24

dismissal.  Id.

    The record showed that eight of the eleven jurors besides
Juror 12 felt that she was not willing to deliberate.  Two of
the jurors heard Juror 12 make comments that injected race into
proceedings.  The Court also found concerning the fact that
Juror 12 did not disclose that she had a nephew on probation
during voir dire before the trial.  Juror 12's denials when
asked if she said she would not deliberate were unsurprising
given the context of questioning and her rationalization of her
comment that she would not judge anyone was not convincing.  The
Court finds no error in its decision to dismiss Juror 12 and
thus a new trial is not warranted on that basis.  United States
v. James, 955 F.3d 336, 346 (3d Cir.), cert. denied, 2020 WL
5882983, 208 L. Ed. 2d 70, 141 S. Ct. 329 (2020) ("District
courts have wide latitude in making the kind of credibility
determinations underlying the removal of a juror, because their
unique perspective at the scene places them in a far superior
position to determine the proper course of action when issues of
juror disqualification arise[.]") (internal alterations and
citations omitted).

    Defendant also argues that the jurors were confused by the
definition of possession and treated the Government's visual aid
during closing as evidence on that point.  (ECF 123 at 9).
Defendant suggests that the jurors were concerned by the meaning

of "interstate commerce" in connection with finding the element
of possession.  (Id.)

The Government contends that Defendant did not lodge a
contemporaneous objection on the issue at any point during
trial, thereby waiving any objection.  (ECF 145 at 49).  It
further contends that the Court properly instructed the jury on
possession, in particular basing its instruction on the Third
Circuit Model Jury Instructions.  (Id.)  They note that the jury
is presumed to have followed these instructions.  (Id.)

Indeed, Defendant never objected to the Court's
instructions on possession and thus did not properly preserve an
objection.  Pungitore, 910 F.2d at 1125-26.  The Government is
also correct that a court will generally presume that a jury
follows its instructions.  United States v. Lee, 573 F.3d 155,
162 (3d Cir. 2009) ("We do presume that juries follow their
instructions."); see also United States v. Vaulin, 132 F.3d 898,
901 (3d Cir. 1997) ("'We must presume that a jury will follow an
instruction to disregard inadmissible evidence ... unless there
is an overwhelming probability that the jury will be unable
to follow the court's instructions, and a strong likelihood that
the impact of the evidence would be devastating to the
defendant.'") (quoting U.S. v. Thornton, 1 F.3d 149, 157 (3d
Cir.1993)).  The limitation on that presumption occurs where
there is an "affirmative reason" in the record that would lead a

26

court to believe that its instructions were not followed.  Lee, 573 F.3d at 163.  Defendant has not proffered such an affirmative reason and the Court discerns none in the record.

In terms of any confusion regarding the meaning of possession under the law, to the extent that the jurors were confused, the Court gave a further instruction to ameliorate such confusion.  (ECF 140 at 3:11-20, 14:13-21, 20:3- 22:12); See Osorio v. Anderson, No. CV 17-1536 (KM), 2020 WL 206000, at *7 (D.N.J. Jan. 14, 2020) ("I see no indication of confusion as to the burden of proof, but even if there had been, the trial [] court's accurate instructions would have cleared it up.").  The Court made clear in its instruction that the Government's PowerPoint was not evidence and that what the Court instructs on the law is controlling.  (ECF 140 at 20:3- 22:12).  Thus, the Court finds no error related to any alleged confusion of the jury on the element of possession.

   d. **Request for Further Briefing and the Motion to File Transcripts Under Seal**

The Court will deny Defendant's request to allow further briefing regarding the dismissal of Juror 12.  For the reasons set forth above, Defendant was given an opportunity to object, and the court finds that the dismissal was not otherwise improper.  The Court also emphasizes that it reviewed the handwritten letter by Defendant in reaching its decision today.

(ECF 123-1 at 1-3 (Defendant's handwritten letter regarding the dismissal of Juror 12 attached to his motion for acquittal)). Further briefing would be superfluous.

Regarding Defendant's motion to file volumes IX and X of the trial transcripts under seal, the Court will deny that application as unnecessary as the parties and the Court have unredacted copies of the transcripts in their possession. Redacted copies of the transcript are already available on the docket.  Thus, filing a copy under seal is unnecessary.  See Carson v. New Jersey State Prison, No. CV 17-6537(RMB), 2018 WL 4554465, at *1 (D.N.J. Sept. 21, 2018) (denying a motion to seal where the court found it unnecessary because redacted copies were already on the docket).

## CONCLUSION

For the reasons expressed above, Defendant's motions (ECF 123, 125) shall be denied.

An appropriate Order will be entered.


Date: June 13, 2022                    s/  Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.